UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONALD SPIAGGI,
    *Petitioner*,

v().

T. PULLEN, Warden of FCI Danbury,
    *Respondent*.

Case No. 3:22-cv-276 (CSH)
July 11, 2023

## RULING ON MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

Petitioner Ronald Spiaggi is a federal inmate who has filed a *pro se* petition for writ of habeas corpus under 42 U.S.C. § 2241. Through his petition, Spiaggi seeks an order directing the Bureau of Prisons ("BOP") to reinstate 41 days of good-time credit toward his early release from prison. The respondent has filed a motion to dismiss Spiaggi's petition. This ruling resolves the motion.

### I. STANDARD OF REVIEW

"A court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)." *Hines v. United States*, 3:22-cv-1622 (SRU), 2023 WL 2346540 at *2 (D. Conn. Mar. 3, 2023). Applying these principles, a petition "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). In assessing the plausibility of a claim, a court must "draw all reasonable inferences in [the petitioner's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an

entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

## II. FACTUAL BACKGROUND

Spiaggi is currently serving a 240-month prison sentence for a federal drug offense conviction. Doc. 6-3 at 3. In the fall of 2020, Spiaggi was incarcerated at FCI Schuylkill. Doc. 1 at 31. There, Spiaggi worked at a UNICOR facility as an "eBay clerk." *Id.*[1] In the course of his employment, Spiaggi would gather property owned, but no longer used by, the federal government so that it could be sold to outside vendors. *Id.* Following purchase, outside vendors would resell property on eBay. *Id.*

In October of 2020, while working at UNICOR, Spiaggi came across various government-issued electronic devices, most notably a laptop and two tablets. *Id.* at 12, 31. As best as the Court can discern from the current record, Spiaggi was permitted to handle these devices within the scope of performing his employment duties—*i.e.*, he was authorized to possess the items for the limited purpose of making them available for sale to an outside vendor.[2] But Spiaggi, believing that he

---

[1] UNICOR is a governmental corporation operated by the BOP that sells services provided by, and goods made by, federal inmates. *See* https://www.bop.gov/inmates/custody_and_care/unicor.jsp (last visited July 6, 2023).

[2] In her motion to dismiss, the respondent does not assert that Spiaggi would have been prohibited from possessing electronic devices to carry out duties directly associated with his employment.

would soon be released to home confinement, decided to directly purchase the electronic devices for his personal use. *Id.* In hopes of accomplishing this purchase, Spiaggi placed the items in a box, along with a letter and 60 stamps. *Id.* Spiaggi then sent the box to an outside vendor identified as "Bobby." *Id.* In the letter within the box, Spiaggi instructed Bobby to send the electronic devices to a particular address and asserted that the enclosed stamps (worth $33) would cover the cost of purchase and shipping. *Id.*

Upon receiving Spiaggi's package, Bobby notified a UNICOR foreman. *Id.* at 14. This prompted a BOP disciplinary investigation. *Id.* at 12-32. When confronted by investigators, Spiaggi admitted that he had packaged and sent electronic devices to Bobby but maintained that this was not impermissible conduct. *Id.* Investigators disagreed and charged Spiaggi with the disciplinary offenses of possessing a hazardous tool (the electronic devices), theft, and bribery. *Id.* at 12–13.

On October 29, 2020, BOP authorities commenced disciplinary proceedings by issuing a disciplinary report to Spiaggi. *Id.* at 11. On November 30, 2022, authorities issued an amended disciplinary report that alleged additional information in support of the disciplinary charges. *Id.* at 12.

On December 15, 2020, a Disciplinary Hearing Officer (DHO) held a disciplinary hearing. *Id.* at 13. At this hearing, Spiaggi testified that he had packaged and sent electronic devices to Bobby, but that he did not perceive this conduct as wrongful. *Id.* Spiaggi also sought to call three witnesses to testify on his behalf. *Id.* at 14. Two of these witnesses (fellow inmates) were not called due to medical concerns related to the Covid-19 pandemic. *Id.* A third witness (a correctional officer) was not called on the ground that his testimony would have been irrelevant. *Id.* The DHO did admit brief witness statements in lieu of testimony. *Id.*

At the conclusion of the disciplinary hearing, the DHO found Spiaggi guilty of a single disciplinary offense—possessing an electronic device. *Id.* at 15. To support the adjudication of guilt, the DHO opined that Spiaggi "possessed" electronic devices when he, by his own admission, attempted to "peddle" a laptop computer and tablets. *Id.* The DHO sanctioned Spiaggi with a 41-day loss of good-time credit, 20 days of disciplinary segregation, and a five-month loss of commissary, telephone, and visitation privileges. *Id.* at 16.

Following his disciplinary conviction, Spiaggi pursued administrative appeals. *Id.* at 23–35. The respondent concedes that these appeals served to exhaust Spiaggi's administrative remedies. Doc. 6-1 at 7.

On February 17, 2022, Spiaggi initiated this action by filing a petition for writ of habeas corpus. ECF No. 1 at 1. The petition challenges Spiaggi's disciplinary conviction on the grounds that: (1) an amended disciplinary incident report was issued 31 days following the issuance of his initial disciplinary incident report; (2) he was not allowed to call witnesses on his behalf; (3) a "vendor" was not questioned in connection with the disciplinary proceedings; and (4) he did not engage in conduct that constituted a disciplinary infraction. *Id.* at 6. As relief, Spiaggi seeks: (1) reinstatement of his lost good-time credit; (2) removal of a "management variable;" and (3) placement on home confinement pursuant to the CARES Act. *Id.* at 8.

On July 11, 2022, the Court issued an order for the respondent to show cause why the relief sought in Spiaggi's petition should not be granted. Doc. 4. On August 11, 2022, the respondent responded to the Court's show-cause order with a motion to dismiss. Doc. 6. Spiaggi thereafter filed a response to the motion to dismiss. Doc. 16. Having thoroughly reviewed the parties' filings, the Court is prepared to rule on the respondent's motion to dismiss.

## III. ANALYSIS

### A. Good-Time Credit

A federal prisoner may obtain relief through the filing of a § 2241 habeas petition when he or she is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Potential § 2241 relief includes reinstatement of good-time credit lost due to a wrongful disciplinary conviction. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

Spiaggi's request for the reinstatement of lost good-time credit sounds in due process. The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To establish a violation of the Fifth Amendment's Due Process Clause, a petitioner must show that: "(1) state action (2) deprived him or her of liberty or property (3) without due process of law." *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015).

Here, the respondent concedes that the BOP deprived Spiaggi of a liberty interest by deducting 41 days of good-time credit from his prison sentence. Doc. 6-1 at 7. Thus, the Court need only consider whether Spiaggi was afforded due process of law.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "[T]o comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" *Williams v. Menifee*, 331 Fed.

App'x 59, 60 (2d Cir. 2009) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). As one last required measure of due process, a disciplinary conviction must be supported by "reliable evidence of the inmate's guilt." *Lune v. Pico*, 356 F. 3d 481, 488 (2d Cir. 2004) (internal quotation marks omitted). Due process only "requires that there be some evidence to support the findings made in the disciplinary hearing. *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455)) (cleaned up). *See also Shand v. Parsons*, No. 3:20-CV-28 (CSH), 2022 WL 2981593, at *7 (D. Conn. July 28, 2022) (applying this standard); *Jordan v. Gifford*, No. 3:19-CV-1628 (CSH), 2022 WL 3106965, at *27 (D. Conn. Aug. 4, 2022) (same).

Spiaggi first contends that the above-noted due process standards were not satisfied in this case because BOP officials filed an amended disciplinary report 31 days after the issuance of their initial disciplinary report. The Due Process Clause does not, however, prohibit prison officials from amending reports that provided notice of disciplinary hearing charges. Had prison officials filed an amended disciplinary report immediately prior to a disciplinary hearing, Spiaggi might have a colorable claim that he received insufficient advanced notice of disciplinary charges. However, Spiaggi received an amended disciplinary report 15 days prior to his disciplinary hearing. This notice more than satisfied due process requirements. *See Wolff*, 418 U.S. at 564 (requiring advance notice of "no less than 24 hours.")

Spiaggi next contends that due process standards were not satisfied in this case because the BOP prevented him from calling witnesses to testify on his behalf. This claim has a potential factual basis: the respondent concedes that the DHO denied Spiaggi's request to call multiple witnesses. Doc. 6-1 at 10. Rather than assess whether the DHO was constitutionally justified in denying Spiaggi's request to call witnesses, the Court will resolve Spiaggi's claim through application of the harmless error rule. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is

entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial.")

Although Spiaggi was charged with three disciplinary infractions—theft, bribery, and possession of an electronic device—he was only convicted of possessing an electronic device. In his disciplinary hearing testimony, Spiaggi denied having engaged in attempted theft and bribery. But he admitted that he packaged and sent a laptop and tablets outside of the prison. Because the DHO viewed this testimony as a confession to the sole disciplinary charge of which he was convicted, the testimony of additional witnesses could have had no impact on the result of the disciplinary hearing. Thus, any presumed constitutional impropriety in denying Spiaggi the opportunity to call witnesses was harmless. *See Marion v. Humphrey*, 2006 WL 2786182 at *5 (S.D.N.Y. 2006) ("Courts may find harmless error where a prisoner fails to show that the error negatively affected the outcome of the proceeding, or that it impaired the prisoner's ability to prepare a defense.")[3]

Spiaggi also challenges his disciplinary conviction on the ground that it was unsupported by disciplinary hearing evidence. Because Spiaggi does not dispute the DHO's finding that he packaged and sent a laptop and tablets to a vendor in hopes of purchasing them for his own use when he was released from prison, he claims, essentially, that the DHO misunderstood this conduct to have been prohibited by penal code.

Spiaggi was adjudicated of having violated "Code 108." BOP regulations define a "Code 108" offense as:

---

[3] Spiaggi also asserts that his due process rights were violated because a vendor (presumably Bobby) was not questioned during disciplinary proceedings. Doc. 1 at 6. Any presumed violation of due process arising from a failure to question Bobby would be harmless for the same reason that Spiaggi's inability to call witnesses was harmless. Because the DHO interpreted Spiaggi's disciplinary hearing testimony as an admission of guilt, it is highly doubtful that the outcome of Spiaggi's disciplinary hearing could have been affected by the admission of additional evidence.

> Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

28 C.F.R. § 541.3, Table 1, 108.

Spiaggi argues that he possessed a laptop and tablets *outside* of prison and, thus, did not violate Code 108. Doc. 16 at 1–2. But this argument overlooks the fact that Spiaggi, by his own admission, exerted control over the laptop and tablet devices at his UNICOR worksite, at least fleetingly, when he packaged and sent them to an outside vendor. During disciplinary proceedings, Spiaggi never asserted that he had explicit permission from BOP/UNICOR officials to send electronic devices to a vendor to facilitate his own purchase of that property. Thus, disciplinary hearing evidence supported a finding that Spiaggi possessed electronic devices in an unauthorized manner. *See Travers v. Jamison*, No. 4:22-CV-00851, 2023 WL 373234 at *1-2 (M.D. Pa. Jan. 24, 2023) (upholding a Code 108 disciplinary conviction when disciplinary hearing evidence supported a finding that an inmate authorized to handle electronic devices at his UNICOR worksite hid a cell-phone in hopes of converting it for his own use at a later time.)

In sum, the DHO reasonably interpreted Spiaggi's disciplinary hearing testimony as an unwitting confession to a disciplinary infraction. Thus, Spiaggi's disciplinary conviction was supported by reliable evidence. Spiaggi has not pled a cognizable violation of his due process rights.

### B. Management Variable

In his petition, Spiaggi asks the Court to "remove [a] management variable" from his BOP classification. Doc. 1 at 8. Because Spiaggi appears to request a modification of his classification status as a remedy for a due process claim that this Court has deemed incognizable, the Court will dismiss his request. To the extent that Spiaggi intended to raise a due process claim related to his

management variable that is distinct from his disciplinary hearing claims, the Court notes that Spiaggi has no liberty interest in maintaining a BOP classification status. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *see also Torres v. Stewart*, 263 F. Supp. 463, 469 (D. Conn. 2003) ("Inmates do not have a constitutionally protected right to a particular classification.")

### C. Home Confinement

In his petition, Spiaggi also requests home confinement pursuant to the CARES Act. Doc. 1 at 8. However, as a general matter, the "BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the inmate from one facility to another." *Milchin v. Warden*, 3:22-cv-195 (KAD), 2022 WL 1658836 at *2 (D. Conn. May 25, 2022). And the CARES Act does not confer this Court with any novel authority to order home confinement. *See United States v. Woody*, 463 F. Supp. 3d 406, 408 (S.D.N.Y. 2020). Thus, the Court lacks authority to order Spiaggi's release to home confinement.

### IV. CONCLUSION AND ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

**(1)** The respondent's motion to dismiss [Doc. 6] is **GRANTED**.

**(2)** Spiaggi's petition for writ of habeas corpus [Doc. 1] is **DISMISSED**.

**(3)** The Clerk of the Court is directed to enter judgment for the respondent and close this case.

It is SO ORDERED.

Dated at New Haven this 11th day of July 2023.

> */s/ Charles S. Haight, Jr.*
> CHARLES S. HAIGHT, JR.
> Senior United States District Judge

9